# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>CYBER LITIGATION INC., *et al.*,<br><br>Debtor. | Chapter 11<br><br>Case No. 20-12702 (CTG)<br><br>**Related Docket No. 401** |

## MEMORANDUM OPINION[1]

The debtor was in the business of detecting and preventing online fraud. Its business collapsed in September 2020 amidst allegations that the enterprise was itself largely fraudulent, including claims that the debtor had raised almost $125 million from investors based on fabricated financial statements. In September 2020, Adam Rogas, the company's founder and Chief Executive Officer, abruptly resigned and was sued by the Securities and Exchange Commission for securities fraud. Soon thereafter, Rogas was arrested and criminally charged with, *inter alia*, securities fraud and wire fraud.

Phil Vizzaccaro was a co-founder of the debtor. He was both an officer (having served as Chief Technology Officer) and a director. He is also the "subject" of an ongoing criminal investigation. The debtor is conducting its own investigation into the allegations of prepetition fraud, using the tools available in bankruptcy under Federal Rule of Bankruptcy Procedure 2004, so that it may pursue any available estate causes of action. In that regard, the debtor seeks to take Vizzaccaro's

---

[1] This Memorandum Opinion sets out the Court's findings of fact and conclusions of law under Fed. R. Civ. P. 52, as made applicable to this contested matter under Fed. R. Bankr. P. 9014(c).

deposition. Vizzaccaro has moved the Court to stay that examination, representing that he would invoke his Fifth Amendment right against self-incrimination in response to at least some questions that he would expect to be asked. Because a factfinder in a civil case may draw an adverse inference from a witness' invocation of the Fifth Amendment, Vizzaccaro argues that the Rule 2004 examination should be stayed in deference to his constitutional interests.

While the Court views the question presented here as a close one, if it were forced to make a binary decision between granting and denying the motion for a stay, the Court believes that the factors set forth in the governing caselaw would counsel in favor of granting the motion to stay the examination. The Court believes, however, that if the debtor would agree to certain conditions that would mitigate the intrusion on Vizzaccaro's Fifth Amendment interests, the balance would tip the other way. The Court accordingly directs the debtor to settle an order, *either* providing that the motion is granted, *or* setting forth the debtor's consent to the conditions that (as discussed below) the Court finds would mitigate the intrusion on Vizzaccaro's Fifth Amendment rights and denying the motion on that basis.

**Factual and Procedural Background**

The debtor was a cyberfraud prevention company that developed and sold electronic tools to help online vendors assess the fraud risks of customer transactions. *Declaration of Daniel P. Wikel, Chief Restructuring Officer of NS8 Inc., in Support of Chapter 11 Petition and First Day Motions,* D.I. 9, at 4. The debtor was founded in 2016 by Rogas and five others (Vizzaccaro among them), with Rogas serving as the

Chief Executive Officer, Chief Financial Officer, and as a member of its board of directors. *Id.*

The original "seed money" to fund the debtor's business operations came from its founders and a handful of other investors. Thereafter, the debtors were able to raise money in the venture capital markets, largely through the sale of convertible preferred stock. By early 2020, the debtor had raised over $123 million from investors through at least four rounds of securities offerings. *Id.* at 5. Apparently flush with cash raised from new investors, in mid-2020 the debtor offered to buy-back its own shares in a series of tender offers, thus providing early-stage investors holding large equity positions with the chance to monetize those holdings. *Id.* at 6. Vizzaccaro allegedly participated in these tender offers. The debtor alleges that Vizzaccaro, via the tender offers, received $13.4 million in cash in exchange for equity he held in the company. *Debtor's Motion for Rule 2004 Examination*, D.I. 244, ¶¶ 2-3.

In September 2020, Rogas abruptly resigned. Shortly thereafter, the SEC filed a complaint in the United States District Court for the Southern District of New York, alleging that Rogas falsified bank statements to show millions of dollars in customer revenue and bank balances that in fact never existed. D.I. 9 at 6. Following the revelation of Rogas' alleged fraud, the debtor retained restructuring counsel, a forensic accountant, and filed these chapter 11 cases. *Id.* at 8-9. In October 2020, a grand jury in the Southern District of New York returned an indictment against Rogas, charging him with federal securities fraud relating to the $123 million in

investments. *Indictment, United States v. Rogas*, SDNY No. 20-00539, D.I. 7 (Oct. 13, 2020).

In February 2021, the U.S. Attorney's Office moved to intervene in the SEC civil action, seeking to stay further civil proceedings against Rogas until the completion of the criminal matter. *United States Motion to Intervene, SEC v. Rogas*, SDNY No. 20-7628, D.I. 46 (Feb. 12, 2021). The U.S. Attorney's Office obtained the desired stay on February 23, 2021, after arguing (among other reasons but relevant to the present case) that allowing the civil and criminal cases to proceed in parallel would force Rogas to choose between asserting his Fifth Amendment right in the civil action (and facing the risk that doing so would lead to an adverse inference being drawn against him) and waiving his Fifth Amendment rights in order fully to defend himself in the civil action. *Stipulation, SEC v. Rogas*, SDNY No. 20-7628, D.I. 49 (Feb. 23, 2021).

Since the petition date, the debtor has conducted an active investigation into the alleged acts of fraud, including looking into potential estate causes of action that might arise out of those allegations. To that end, the debtor sought authority to conduct discovery under Rule 2004 regarding cash transfers made by the debtor to the investors and/or the debtor's founders, former officers, directors and/or employees, including Vizzaccaro and his company, Gator.io. *Debtor's Motion for Order Authorizing Procedures for Rule 2004 Examinations of Transferees*, D.I. 194, at 7. In late January 2021, the Court entered an order approving the debtor's Rule 2004 motion and authorizing the service of subpoenas on approximately 30

individuals and entities who allegedly received transfers from the debtor. *Order Granting Debtor's Motion for Order Authorizing Procedures for and Rule 2004 Examinations of Transferees*, D.I. 226. The debtor has since obtained court approval of a number of settlements with transferees who received funds in transactions that the estate alleged would give rise to avoidance actions in bankruptcy. *See, e.g., Debtor's Motion to Approve Settlement with Lillian and Evan Englund*, D.I. 352; *Debtor's Motion to Approve Settlement with Sytze Koolen*, D.I. 353; *Debtor's Motion to Approve Settlement with Paul Korol*, D.I. 395.

In response to the Rule 2004 motion, Vizzaccaro's counsel notified Debtor's counsel that that soon after Vizzaccaro received the tender offer proceeds, he founded Gator.io and transferred approximately $8 million of the $13.4 million in cash proceeds to the new company. D.I. 244 ¶ 16; D.I. 404 ¶ 4. The debtor then served Gator.io with a Rule 2004 subpoena. D.I. 330; D.I. 331. The debtor's Rule 2004 subpoenas direct Vizzaccaro and Gator.io to produce documents and provide testimony regarding, among other things: (i) payments received on account of the debtor's alleged fraudulent tender offers, (ii) the circumstances surrounding compensation received from the debtor, (iii) communications with Rogas, (iv) the $8 million transferred to Gator.io from Vizzaccaro, and (v) Gator.io's relationship with the debtor and any additional transactions between Vizzaccaro or Gator.io and the debtor. D.I. 194 ¶ 22. The debtor has asserted that it is investigating not only potential claims for fraudulent conveyance (arising out of the receipt of proceeds from

5

the tender offer) but also potential claims for breach of fiduciary duty arising from Vizzaccaro's role as a director of the debtor.

Following this initial round of subpoenas and responses, Vizzaccaro and Gator.io moved to stay further Rule 2004 discovery pending the resolution of Rogas' federal criminal action. D.I. 401. The motion asserts that Vizzaccaro has been advised by the United States Attorneys' Office that he is a "subject" of the grand jury investigation relating to Rogas' alleged securities fraud and contends that the "overlap" between the Rule 2004 motion and the criminal matter warrants a stay of discovery.[2] Otherwise, the motion argues, Vizzaccaro would be put to the "Hobson's Choice" of having to assert his Fifth Amendment right in response to the Rule 2004 subpoena and face the risk that an adverse inference could be drawn in any future civil litigation, or waive his Fifth Amendment rights in order to defend against potential civil liability. D.I. 402 at 8. In response, the debtor contends that the early stage of the criminal proceedings and the bankruptcy estate's important interest in addressing the alleged acts of prepetition fraud outweigh the potential prejudicial effect of the Rule 2004 examination on Vizzaccaro's Fifth Amendment interests. D.I. 416 at 9-15.

---

[2] The Department of Justice Manual defines a "target" as a person as to whom the prosecutor or the grand jury has substantial evidence linking him or her to the commission of a crime and who, in the judgment of the prosecutor, is a putative defendant. An officer or employee of an organization that is a target is not automatically considered a target even if such officer's or employee's conduct contributed to the commission of the crime by the target organization. Further, a "subject" of an investigation is a person whose conduct is within the scope of the grand jury's investigation. Justice Manual at 9-11.151 (available at https://www.justice.gov/jm/jm-9-11000-grand-jury#9-11.151).

## Analysis

The Fifth Amendment of the United States Constitution provides that "[n]o person … shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. In other words, at least in the criminal context, individuals have a constitutional right to remain silent.[3] To give effect to that right, a jury is not permitted to draw an adverse inference from a defendant's invocation of the Fifth Amendment in a criminal case.[4]

While a witness in a civil case is permitted to invoke the Fifth Amendment (and cannot be compelled to give an answer that may be incriminating),[5] the Constitution does not prohibit a factfinder from drawing an adverse inference from that invocation.[6] "The rule allowing invocation of the privilege, though at the risk of suffering an adverse inference or even a default, accommodates the right not to be a witness against oneself while still permitting civil litigation to proceed."[7]

Given the pressure that this adverse inference may put on an individual's Fifth Amendment right, however, courts have the discretion to stay a civil proceeding pending an ongoing criminal investigation. A robust body of caselaw identifies the following factors courts should consider:

    (i)    the extent of the overlap between the issues in the criminal case and those in the civil case;

---

[3] *Miranda v. Arizona*, 384 U.S. 436, 444-445 (1966).

[4] *Griffin v. California*, 380 U.S. 609, 614-615 (1965).

[5] *Lefkowitz v. Turley*, 414 U.S. 70, 77 (1973).

[6] *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976).

[7] *Mitchell v. United States*, 526 U.S. 314, 328 (1999).

(ii) the status of the criminal case, including whether the defendant has been indicted;

(iii) the private interests of the plaintiff in proceeding expeditiously, weighted against the prejudice to plaintiff caused by the delay;

(iv) the private interests of and the burden to the defendant;

(v) the interests of the courts; and

(vi) the public interest.[8]

In this Court's view, this articulation of factors reflects a recognition that allowing a civil case to proceed against an individual who is facing (or may face) criminal charges risks putting the defendant (or potential defendant) "between-a-rock-and-a-hard-place." A person facing possible criminal charges will often be well advised (regardless of the individual's factual innocence or guilt) to invoke the Fifth Amendment to avoid the risk that testimony may be misconstrued or taken out of context in a subsequent criminal prosecution. But where a party that does so faces the risk that a jury in a civil case will be asked to infer, from that invocation, that the defendant committed the acts in question, it places pressure on the interests the Fifth Amendment is intended to protect. At bottom, the six-part multi-factor test requires a court to weigh the extent to which permitting a civil proceeding to go forward will put such pressure on the invocation of a litigant's Fifth Amendment rights against

---

[8] *See generally E.I. du Pont de Nemours & Co. v. Anchi Hou*, 2017 U.S. Dist. LEXIS 88566, at *2 (D. Del. June 9, 2017); *Maloney v. Gordon*, 328 F. Supp.2d 508, 511 (D. Del. 2004) (same); *Microfinancial, Inc. v. Premier Holidays Int'l, Inc.*, 385 F.3d 72, 78 (1st Cir. 2004) (same); *Federal Sav. & Loan Ins. Corp. v. Molinaro*, 889 F.2d 899, 902-903 (9th Cir. 1989) (same); *SEC v. Dresser Indus., Inc.*, 628 F.2d 1368, 1375-1376 (D.C. Cir. 1980) (same).

the need for civil litigation to move forward promptly and for those who hold such civil claims to seek appropriate redress.

If this Court's only choice were to make a binary decision between staying the Rule 2004 exam or allowing it to proceed, based on the application of this six-factor balancing test, the Court would likely conclude that the examination should be stayed. The Court assesses the six factors set forth in the caselaw as follows:

*First*, the question of "overlap" is intended to determine whether the questions the deponent is likely to be asked are the same questions that would implicate the Fifth Amendment right. The parties dispute whether the issues overlap. Debtor takes the view that because there is not yet any civil case, just a Rule 2004 examination in which the debtor is seeking to understand potential estate causes of action, that this is not a case in which the elements of a criminal charge overlap with those of a pending civil cause of action. D.I. 416 at 12-13. But that misapprehends the relevant enquiry. Here, the debtor is candid in acknowledging that a critical part of its Rule 2004 examination will be to inquire whether Vizzaccaro had personal involvement in (or knowledge of) Rogas' allegedly fraudulent scheme. *Id.* ¶ 28. Those are the very matters that would likely implicate Vizzaccaro's Fifth Amendment interests. The Court therefore does believe that there is a substantial overlap, counseling in favor of staying the Rule 2004 examination.

*Second*, the Court looks to the status of the criminal case. This factor counsels against granting a stay. Vizzaccaro has not been indicted. Indeed, the record indicates that he is a "subject," not even a "target," of a criminal investigation. Some

cases could be read to suggest that a court should never stay a civil case on account of a parallel criminal proceeding unless and until the potential witness in the civil case has actually been indicted.[9] Other cases indicate that the state of the criminal matter is simply one of the factors that gets weighed in the mix along with the others.[10] This Court believes that in the context of this kind of multi-factor balancing test that governs this enquiry, the most sensible approach is to treat this as a factor to be considered in the balance. Here, this factor would counsel against a stay.

*Third*, the caselaw directs the Court to consider the "plaintiff's interest," which in this context (arising in connection with a Rule 2004 examination rather than a civil action) requires the Court to consider the strength of the debtor's interest in taking the Rule 2004 examination. In the scheme of things, the Court views that interest as a relatively weak one. That is not to minimize the estate's interest in seeking to conduct a thorough investigation of any wrongful acts that led to the bankruptcy filing and to pursue causes of action that would lead to recoveries for the benefit of creditors. That is the debtor's obligation as a fiduciary to the estate, and the work it has done thus far (leading to several substantial settlements) has already produced concrete benefits. But as important as Rule 2004 is in providing a mechanism to investigate the financial affairs of the debtor, including potential estate causes of action, its importance diminishes once a party conducting such an investigation is in a position (consistent with Federal Rule of Civil Procedure 11) to

---

[9] *See generally In re NJ Affordable Homes Corp.*, 2007 WL 869577 at *5 (Bankr. D.N.J. Mar. 19, 2007).

[10] *Walsh Sec. v. Cristo Prop. Mgt.*, 7 F. Supp.2d 523, 527 (D.N.J. 1998).

initiate a civil action. Once such an action is brought, the party is entitled to make use of the tools of discovery, which then replace the use of Rule 2004 as the means to establish its case.[11] The debtor does not dispute that it has a sufficient basis to assert estate causes of action against Vizzaccaro and Gator.io. And while the debtor would undoubtedly prefer to obtain further discovery under Rule 2004, in view of the debtor's ability to assert a claim, the need for Rule 2004 discovery in these circumstances is relatively attenuated. This factor accordingly counsels in favor of granting the motion to stay.

*Fourth*, the Court examines the burden on the defendant. In this context, the relevant factor is the imposition on the potential criminal defendant's Fifth Amendment interest. It is not clear that this factor adds much to the analysis beyond the concerns identified in the first and second factors. The fact that the enquiry is likely to focus on many of the issues that are the likely the subject of the criminal investigation suggests that Vizzaccaro has a strong interest at stake; the fact that he is only a "subject" counsels against a stay. Beyond that, the Court does not believe there are further material interests that factor meaningfully into the analysis.

*Finally*, the Court weighs the interest of the courts and the public interest. Here, the fifth and sixth factors are considered together. To be sure, a court always has an interest in moving matters forward on its docket. And there is a "public interest" in having the bankruptcy system operate as designed, such that estate

---

[11] *See generally In re Wash. Mut. Inc.*, 408 B.R. 45, 50 (Bankr. D. Del. 2009) (explaining that Rule 2004 may not be used to circumvent the limits on discovery in a pending proceeding).

11

causes of action are timely identified and pursued. But for the reasons discussed under the third factor, neither of these interests factors very heavily here. There is no pending civil action. The matter sought to be stayed is simply discovery the debtor seeks to take under Rule 2004. And while there is a value in allowing it to proceed, the debtor's ability to initiate a civil lawsuit mitigates the importance of this examination in the broader scheme of things.

In light of this assessment of the applicable factors, as described above, if the Court had no choice but to make a binary decision between granting and denying a stay, the Court would be inclined to grant it. While the debtor certainly makes reasonable arguments in opposition to the motion (particularly the emphasis on the fact that Vizzaccaro is only a subject of the investigation), the Court is persuaded that the risk to Vizzaccaro's Fifth Amendment rights is a serious one and that the need for the Rule 2004 examination in the context of this case is rather attenuated. In weighing all the factors, the Court would conclude, after a full consideration of the balance of harms, that the motion should be granted.

The Court does not believe, however, that it is required to make such a binary choice between granting and denying a stay. Rather, there appears to be ample authority for a court facing a situation like this one to take other measures to protect a potential defendant's Fifth Amendment interests while at the same time accommodating a legitimate interest in allowing discovery to proceed.[12]

---

[12] Given that Vizzaccaro is the sole proprietor of Gator.io, and that any information sought from Gator.io would stem from Vizzaccaro by nature of being the designated representative,

For example, in *Harrell v. DCS Equipment Leasing Corp.*, a trial court determined, under Federal Rule of Evidence 403, to exclude from evidence the fact of a civil defendant's prior invocation of his Fifth Amendment right, even though (as discussed above) the Fifth Amendment does not by its terms prohibit a jury from drawing an adverse inference from that invocation.[13] The Fifth Circuit affirmed. *Id.* at 1466. In an opinion by Judge John Minor Wisdom, the court emphasized that the "potential prejudice in revealing the invocation of the Fifth Amendment is high, because the jury may attach undue weight to it, or may misunderstand [a defendant's] decision to invoke his constitutional privilege." *Id.* at 1465. Because a trial court has "wide discretion" to exclude evidence when its probative value is substantially outweighed by the risk of prejudice, the Fifth Circuit concluded that the trial court acted "well within his discretion" in excluding the invocation of the Fifth Amendment.[14]

This Court similarly believes that it may take appropriate steps to set forth conditions that would mitigate the prejudice to Vizzaccaro if the debtor were permitted to proceed with the Rule 2004 exam and to condition the denial of Vizzaccaro's motion on the trustee's agreement to accept those conditions.

---

the below analysis applies equally to Gator.io, such that those Rule 2004 exams effectively rise or fall together.

[13] 951 F.2d 1453, 1465 (5th Cir. 1992).

[14] *See also Martindell v. Int'l Tel. & Tel. Corp.*, 594 F.2d 291 (2d Cir. 1979) (enforcing protective order to bar access to the transcript in which defendant invoked the Fifth Amendment to mitigate prejudice to defendant's Fifth Amendment rights).

In particular, the Court is persuaded that the debtor has a legitimate interest in learning whether Vizzaccaro would be able to provide useful testimony regarding the involvement of other parties in Rogas' alleged fraudulent acts, and it is at least conceivable that Vizzaccaro may be willing to provide useful testimony in response to questions about others' involvement. Accordingly, to the extent the Rule 2004 exam could proceed in a manner that would not put undue pressure on Vizzaccaro's Fifth Amendment interests, it would be appropriate to allow it to go forward.

To that end, the Court is confident that, to the extent this Court is the ultimate factfinder in any dispute to which Vizzaccaro is a party, it would be able (as the trial court did in *Harrell*) to exclude from evidence Vizzaccaro's invocation of the Fifth Amendment, and thus significantly reduce the threat posed by the Rule 2004 examination to Vizzaccaro's Fifth Amendment rights. The examination could proceed, and Vizzaccaro could invoke the Fifth Amendment whenever appropriate without being put "between-a-rock-and-a-hard-place," as he might be if a factfinder may later draw an adverse inference from his invocation of his Fifth Amendment rights.

To the extent the debtor does ultimately assert a civil claim against Vizzaccaro, however, the debtor would be entitled to do so in any court of competent jurisdiction, of which this Court would be just one of potentially many. And even if such an action were to be brought in this Court, the debtor would be entitled at any time to seek to withdraw the reference to litigate the claim in the district court. In that event, this Court's intent to exclude a Fifth Amendment invocation from evidence would be of

14

little comfort to Vizzaccaro, who might again find himself "between-a-rock-and-a-hard-place."

The debtor, however, could resolve those concerns by committing to bring any civil action against Vizzaccaro in this Court and further agreeing to consent, under 28 U.S.C. § 157(c)(2) (to the extent any such action is a non-core proceeding) to the entry of final judgment by this Court. That is not to suggest that this Court could or would *require* the debtor to do so. The debtor is fully entitled to pursue its claims in any court of its choosing. In that event, however, the Court would be inclined (for the reasons described above) to grant Vizzaccaro's motion to stay the Rule 2004 exam. The Court concludes, however, that if the debtor were to consent to these two conditions, the potential risk to Vizzaccaro's Fifth Amendment interests would be sufficiently mitigated to tip the balance in favor of permitting the examination to proceed.

Counsel for Vizzaccaro noted, at argument on the motion, that Vizzaccaro might not consent to have a civil action proceed before this Court and could very well insist on a right to a jury trial in any civil action, or otherwise seek to withdraw the reference. Nothing in the conditions set forth above, however, restricts Vizzaccaro from proceeding in any manner he chooses. This Court is persuaded that, if the debtor were to consent to the conditions described herein, the risk to Vizzaccaro's Fifth Amendment rights will have been sufficiently mitigated that the motion should be denied. Vizzaccaro would be fully entitled to later determine (with the benefit of knowing what transpired in the Rule 2004 examination) that it is nevertheless in his

interest to move to withdraw the reference or otherwise seek to have the matter proceed in another court (where he may face the risk of an adverse inference from his invocation of the Fifth Amendment during his Rule 2004 examination). Vizzaccaro would remain free to proceed however he considers appropriate, and nothing about the debtor's consent to the conditions described above (if it is given) would impair Vizzaccaro's rights in that regard in any respect.

One final point ought to be made. As the Court's analysis of the six-factor test presumably made clear, a key consideration in the Court's analysis is its judgment that, in light of all of the information already available, and the debtor's ability to proceed directly to asserting a civil claim, the Rule 2004 discovery the debtor seeks to take is, in the scheme of things, relatively less important than protecting Vizzaccaro's Fifth Amendment rights. Nothing in that analysis, however, indicates how the Court would consider the issue if Vizzaccaro were to seek a stay of a deposition in an actual civil lawsuit asserting an estate cause of action. In that situation, the arguments advanced by the debtor about the need for the civil action to proceed (and perhaps for the propriety of drawing an adverse inference) would be stronger than they are in the context of this motion. This statement is not to prejudge in any way how the Court would consider the issue in that context. To the contrary, all parties would be free to make whatever arguments they considered appropriate, and the Court would assess the question in the concrete context in which it was presented. The only point that needs to be made now, however, is that nothing in this decision resolves that question.

## Conclusion

For the forgoing reasons, the debtor is directed to settle an order that *either* (i) states that the motion is granted; *or* (ii) contains representations by the debtor that (a) any civil action the estate may pursue against Vizzaccaro will be brought in this Court and (b) further consents, under 28 U.S.C. § 157(c)(2) (to the extent any such action is a non-core proceeding) to the entry of final judgment in this Court in any such proceeding. To the extent the proposed order contains the representations set forth in clause (ii) of the preceding sentence, the order should further provide that, on account of such representations, the motion to stay is denied.

Dated: June 28, 2021

CRAIG T. GOLDBLATT
UNITED STATES BANKRUPTCY JUDGE