## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re:<br><br>CYBER LITIGATION INC.,<br><br>    Debtor. | Chapter 11<br><br>Case No. 20-12702 (CTG)<br><br>**Related Docket No. 457** |

## AMENDED* MEMORANDUM OPINION

The debtor has moved to disallow a claim filed by Hansen Networks, which the debtor scheduled as its largest unsecured creditor, on the ground that the proof of claim was filed after the bar date and should thus be disallowed as untimely. The parties have stipulated that the official bar date notice, as approved by the Court, was sent to the wrong address. D.I. 374-1. An evidentiary hearing established that the bar date notice was sent by mail to David Hansen, the principal of Hansen Networks, but at an address where Mr. Hansen was no longer residing at the time the notice was sent. The evidentiary record also makes clear, however, that the bar date notice was sent by email to an email account that Mr. Hansen actively used.

Is that email notice good enough? If the only question before the Court were whether the notice satisfied the requirements of due process, this Court would conclude that it was. Due process requires that notice be provided in a means "such

---

*Following the issuance of this Memorandum Opinion, the Court was apprised of a provision of Federal Rule of Bankruptcy Procedure 9036, as amended in 2019, that relates to the matters addressed herein. While that Rule is not applicable to circumstances of this case, to avoid introducing any confusion regarding the application of the Rule in the cases to which it is directed, the Court is issuing this Amended Memorandum Opinion, which adds (in addition to this footnote) note ** on p. 17.

as one desirous of actually informing the [party to be bound] might reasonably adopt to accomplish it."[2]  Sending an email to an email address that the party actively used would seem to fit that description.

But meeting the constitutional due process standard is not the only requirement.  The debtor is also obligated to comply with the Federal Rules of Bankruptcy Procedure.  And Bankruptcy Rule 2002(a)(7) provides that "the clerk, or some other person as the court may direct, shall give the debtor, the trustee, all creditors and indenture trustees at least 21 days' notice *by mail* of … (7) the time fixed for filing proofs of claim pursuant to Rule 3003(c)."  Fed. R. Bankr. P. 2002(a)(7) (emphasis added).  This Court's bar date order authorized the Debtor, with the assistance of the claims agent, to provide that notice.  D.I. 145 ¶ 12.  And fairly read, the term "notice by mail" does not include email.

Bankruptcy Rule 2002(a)(7) is what the Supreme Court described in *Kontrick v. Ryan* as a "claims processing rule."[3]  The issue in *Kontrick* was not the claims bar date but the deadline under Bankruptcy Rules 4004 and 4007 for bringing a non-dischargeability action.  While the Court held that compliance with such a rule could be forfeited (there, the defendant failed to raise the untimeliness of the claim until after the court entered judgment), *Kontrick* leaves no doubt that Bankruptcy Rules 4004 and 4007 set out mandatory requirements with which litigants must otherwise

---

[2] Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950).

[3] 540 U.S. 443 (2004).

comply.[4]  The same is true of Rule 2002(a)(7).  Perhaps, in a case in which a debtor could prove that a creditor obtained actual subjective knowledge of the bar date with more than 21 days' notice, the failure to provide appropriate service by mail of the bar date notice could be treated as harmless error under Bankruptcy Rule 9005.[5]  But the record established here would not support such a finding.

The Court does note that it is troubled by the manner in which Mr. Hansen conducted himself at his deposition.  Mr. Hansen testified (at a deposition that was focused, at least in part, on whether notice was provided to the correct address) that he could not recall his home address.[6]  Other answers were evasive.[7]  While Mr. Hansen endeavored to repair the damage by offering, at the evidentiary hearing, explanations for some of his deposition conduct, those efforts were no more than partially successful.  The Court does not believe, however, that this conduct provides a basis to deprive Hansen Networks of the procedural protections afforded to it by Bankruptcy Rule 2002(a)(7).  The debtor's objection to Hansen Networks' proof of

---

[4] The Court did not resolve the question whether the rules at issue would admit of an "equitable exception" in appropriate circumstance, a question on which there was a division of authority among the courts of appeals.  *See id.* at 457-458 & n.11.

[5] Fed. R. Bankr. P. 9005 provides, in relevant part, that "[w]hen appropriate, the court may order the correction of any error or defect or the cure of any omission which does not affect substantial rights").  Bankruptcy Rule 9005 also makes Rule 61 of the Federal Rules of Civil Procedure applicable to bankruptcy cases. That rule states that "[a]t every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights."  Fed. R. Civ. P. 61.

[6] *See* D.I. 489-1 at 3-4 (in which Mr. Hansen states, in response to a question regarding the addresses of the properties where he lives, that "I don't know either address off the top of my head").

[7] *See id.* at 5 (in which Mr. Hansen states, when asked where he lived when he resided in Las Vegas, "in a house").

claim on timeliness grounds will thus be overruled, without prejudice to the rights of the debtor or any other party-in-interest to object to the allowance of the claim on any other ground.[8]

## Factual and Procedural Background

The debtor was in the business of detecting and preventing online fraud.[9]  Its business collapsed in September 2020 amidst allegations that the enterprise was itself largely fraudulent, including claims that the debtor had raised almost $125 million from investors based on fabricated financial statements.  *Id.* at 6.

### 1.    Hansen Networks and the bar date order

Hansen Networks is a provider of information technology services, such as email support, file support, networking, and telephones.  Sept. 15, 2021 Hearing Tr. at 20.  Hansen Networks provided services for the debtor for approximately two years, from 2018 through 2020.  *Id.* at 20-21.  The debtor's schedules list Hansen Networks as their largest unsecured creditor, holding a contingent, unliquidated, and disputed claim for just under $300,000.  D.I. 115.

Mr. Hansen is the principal of Hansen Networks.  He was also a cofounder of the debtor, Sept. 15, 2021 Hearing Tr. at 21.  While employed by the debtor, Hansen held a variety of positions, including Managing Director of Technical Operations and Strategies, Chief of Staff, and Chief Information Officer.  *Id.* at 43-44.

---

[8] This Memorandum Opinion sets out the Court's findings of fact and conclusions of law under Fed. R. Civ. P. 52, as made applicable to this contested matter under Fed. R. Bankr. P. 9014(c).

[9] Declaration of Daniel P. Wikel, Chief Restructuring Office of NS8 Inc., in Support of Chapter 11 Petition and First Day Motions, D.I. 9 at 4.

In early December 2020, this Court issued an order establishing February 12, 2021 as the deadline for filing proofs of claim.  D.I. 145.  As Bankruptcy Rule 2002 permits, that order authorized the debtor and its claim agent, rather than the Clerk of the Court, to provide notice of the bar date to creditors and parties-in-interest.  *Id.* ¶ 12.  The debtor filed the bar date notice, formally captioned as *Notice of Deadlines for Filing Proofs of Claim*, on the Court's docket.  *See* D.I. 157.  The debtor's claims agent filed affidavits of service indicating that the bar date notice was mailed to various parties-in-interest between December 14, 2020, and January 4, 2021, and published in the national edition of the New York Times.  *See generally* D.I. 174, 191, 192, and 199.  The affidavit of service docketed at D.I. 174 shows that the bar date notice was mailed to Hansen Networks at 4255 Dean Martin Drive in Las Vegas, Nevada.  The affidavit also shows mail service on Mr. Hansen at an address that was redacted (in light of privacy concerns), but that the trial record reveals was located in Bayamon, Puerto Rico.  *See* D.I. 487 ¶ 6.  The affidavit also shows email service on Hansen Networks at billing@hansennetworks.com and on David Hansen at an email address that was redacted, D.I. 174 at 5, 7, 18, but that the trial record reveals was david.note@outlook.com.  D.I. 487 ¶ 6.[10]

## 2.   Formal notice of the bar date and Hansen Networks' proof of claim

A stipulation filed by the parties in May 2021 states that, approximately one month after the passage of the bar date, in March 2021, counsel for Hansen Networks

---

[10] This email address is also included, in unredacted form, in the parties' briefs, which are available on the Court's public docket.

reached out to the debtor advising that Hansen Networks contended that it had not received notice of the general bar date.  D.I. 374-1 at 2.  The stipulation also recites that the debtor confirmed with the claims agent that the mail and email address to which the bar date notice was sent were inaccurate "and therefore not received" by Hansen Networks.  *Id.*  The parties' stipulation indicated that they agreed that the formal service on Hansen Networks was ineffective, and that so long as Hansen Networks promptly filed a proof of claim, such a claim would not be subject to disallowance as untimely on account of the formal service of the bar date notice made on Hansen Networks.  The stipulation preserved, however, the debtor's ability to seek to enforce the bar date "on any other grounds that such proof of claim was not timely filed," *id.*, meaning that the debtor would still be permitted to offer other reasons why the bar date could properly be enforced against Hansen Networks.  That stipulation was approved by order of this Court on May 20, 2021.  D.I. 374.  Hansen Networks filed a proof of claim, in in the amount of $343,693.55, on May 26, 2021.  Proof of Claim No. 83.

### 3.    Claim objection and August 25, 2021 hearing

The debtor objected to the claim on the ground that it was untimely, contending, among other things, that the service made by mail and email on Mr. Hansen was sufficient to bind Hansen Networks.  D.I. 457.  Hansen Networks opposed the motion, asserting that Mr. Hansen did not in fact receive the notice that was allegedly served on him, and attaching a declaration by Mr. Hansen that states that he never received the notice of the bar date.  D.I. 480.

Mr. Hansen was subsequently deposed.  In its reply in support of the motion to disallow, the debtor attached certain pages of the deposition transcript in which Mr. Hansen claimed not to know his home address and was generally evasive in response to the questions posed.  D.I. 489.[11]

When the matter first was set for hearing on August 25, 2021, Hansen Networks contended that it had not had a fair opportunity to respond to certain of the points set forth in the debtor's reply brief and that the pages that the debtor selected from Mr. Hansen's deposition were incomplete.  Aug. 25, 2021 Hearing Tr. at 15, 21.  The Court accordingly determined that it would be more appropriate to resolve this contested matter on a more complete evidentiary record.  *Id.* at 25-29; *see also* D.I. 495 at 1-2.

### 4.    Mr. Hansen's testimony re: service by mail

That evidentiary hearing was held on September 15, 2021 and included the "in-court" testimony of Mr. Hansen.[12]  Perhaps because of Mr. Hansen's surprising deposition testimony in which he said that he did not remember his home address, coupled with an affidavit of the claims agent that identified an address in Bayamon, Puerto Rico on which mail service was effected, much of Mr. Hansen's direct

---

[11] *See* D.I. 489-1 at 3-4 (in which Mr. Hansen states, in response to a question regarding the addresses of the properties where he lives, that "I don't know either address off the top of my head"); *id.* at 5 (in which Mr. Hansen states, when asked where he lived when he resided in Las Vegas, "in a house").

[12] "In court" is in scare quotes because Mr. Hansen was physically located at his residence in Vega Alta, Puerto Rico, and appeared "in court" by Zoom.  *See* D.I. 518.

testimony was dedicated to explaining where he lived, and how it could be that he was unable to remember his address at his deposition.

To that end, Mr. Hansen testified that in May 2020, not long after the onset of the pandemic, he and his fiancé decided to move to Puerto Rico after he had lived in Las Vegas, Nevada for about 19 years. Sept. 15, 2021 Hearing Tr. at 9. Mr. Hansen's fiancé had lived for several years in St. Thomas, and after an unsuccessful effort to move there in March and April of 2020, Mr. Hansen decided in May to move to Puerto Rico. *Id.* at 9-10.

Mr. Hansen testified that he is not fluent in Spanish and has moved to five different residences in his time living in Puerto Rico in order to "get an idea and feel for where [on] the island we wanted to live and to . . . raise a family." *Id.* at 10. Mr. Hansen's testimony, and the leases that were admitted into evidence, show that Mr. Hansen was a resident at an address in Bayamon, Puerto Rico from May 1, 2020 until July 31, 2020. *Id.* at 14; HN1.[13] He thereafter moved to a number of other parts of Puerto Rico – first to a condominium in Condado through October 2020,[14] then to the El Dorado Club in Vega, Alta, Puerto Rico.[15]

Mr. Hansen explained that, in addition to being unfamiliar with Spanish, because he had moved many times and never used any of the addresses for mail, the addresses "were never anything I really would actively use." Sept. 15, 2021 Hearing

---

[13] Documents that were admitted into evidence are cited to using the document numbers designated by the parties.

[14] Sept. 15, 2021 Hearing Tr. at 15; HN2.

[15] Sept. 15, 2021 Hearing Tr. at 16; HN3.

8

Tr. at 18.  In explaining some of his seemingly evasive deposition testimony, Mr. Hansen said at trial that he was unable to provide more concrete testimony at his deposition regarding his addresses because "I did not know exact dates of . . . all my moves and I did not want to give an exact date if it was off [by] even a day.  Again, it was something that I just didn't want to do.  I did not want to give anything incorrect on the record."  *Id.* at 19.  Whether or not one finds this explanation for the answers (and non-answers) that Mr. Hansen provided at his deposition satisfactory, the record does establish that by the time the debtor's claims agent served Mr. Hansen by mail with notice of the bar date in December 2020, Mr. Hansen no longer lived at the address in Bayamon, Puerto Rico to which that notice was addressed.[16]

### 5.    Mr. Hansen's testimony re: email service

On direct examination, counsel for Hansen Networks showed Mr. Hansen the affidavit of the claims agent, D.I. 487, demonstrating service of the bar date notice by mail to Bayamon, Puerto Rico and by email to the david.note@outlook.com email address.  Sept. 15, 2021 Hearing Tr. at 34.  Mr. Hansen testified that he never received the mail at the address in Bayamon, Puerto Rico, but acknowledged his use of the Outlook email address.  *Id.*  He denied, however, ever seeing any email related to the debtor's bankruptcy case that were sent to that email address.  *Id.*  Other than stating that he had not used his Outlook email address for business related to Hansen

---

[16] Mr. Hansen also explained, consistent with the parties' stipulation, that Hansen Networks moved to a remote-only working environment in 2017, such that the only address for receipt of mail would be the address of Hansen Networks' accountant.  *Id.* at 23.

Networks before October 2020, *id.* at 35, Mr. Hansen offered no further explanation for that claim. *Id.*

On cross-examination, Mr. Hansen acknowledged that he has no reason to dispute that the bar date notice was in fact sent to his Outlook email address. *Id.* at 46. And he also admitted that he recently used that address for communications related to the bankruptcy case. *Id.* at 45.

## Jurisdiction

This claims allowance dispute arises under 11 U.S.C. § 502 and is therefore within the district court's subject-matter jurisdiction set forth in 11 U.S.C. § 1334(b). The U.S. District Court for the District of Delaware has referred such cases (as 28 U.S.C. § 157(a) authorizes) to this Court under its February 29, 2012 *Amended Standing Order of Reference.* Claims allowance disputes are core matters under 28 U.S.C. § 157(b)(2)(B).

## Analysis

Claims allowance is governed by Bankruptcy Code section 502, which provides that a proof of claim filed under section 501 "is deemed allowed, unless a party in interest … objects." 11 U.S.C. § 502(a). The Code also expressly contemplates that such proofs of claim will be subject to a bar date, providing that a claim should be disallowed if "proof of such claim is not timely filed." 11 U.S.C. § 502(b)(9).[17]

---

[17] Fed. R. Bankr. P. 3003(c)(3) further contemplates that the bankruptcy court will establish a bar date, stating that the "court shall fix and for cause shown may extend the time within which proofs of claim or interest may be filed."

For the bar date to be enforceable, however, a creditor must, at a bare minimum, receive sufficient notice to satisfy the constitutional requirement of due process. As the Supreme Court has explained, that means "notice reasonably calculated, under all the circumstances, to apprise [the creditor of the bar date]."[18]  In addition, however, Congress has authorized the Supreme Court to promulgate rules of bankruptcy procedure. *See* 28 U.S.C. § 2075. "The Rules are binding and courts must abide by them unless there is an irreconcilable conflict with the Bankruptcy Code."[19]  Bankruptcy Rule 2002 accordingly imposes procedural requirements that must be met in connection with the establishment of a bar date.

## I.    The notice provided to Hansen Networks complied with the requirements of due process.

It is well established that to bind a creditor to a claims bar date, known creditors must receive "actual notice." A long line of cases establishes that the paradigmatic means for providing "actual notice" is by mail to a creditor's last known address.[20]  Here, it is stipulated that the address to which the bar date notice was mailed was not Hansen Networks' last known address. D.I. 374-1 at 2.

---

[18] *Mullane*, 339 U.S. at 314.

[19] *In re Mansaray-Ruffin*, 530 F.3d 230, 235 (3d Cir. 2008).

[20] *See In re Freedom Communications Holdings*, 472 B.R. 257, 262 (Bankr. D. Del. 2012) ("here, as is generally the case, mailing a notice to a party's last known address is 'reasonably calculated' to provide actual notice"); *see also Tulsa Prof'l Collection Servs., Inc. v. Pope*, 485 U.S. 478, 490 (1988) (stating mail service is efficient and reasonably calculated to provide actual notice); *In re Eagle Bus Mfg., Inc.*, 62 F.3d 730, 736 (5th Cir. 1995) (reasoning mail to the last known address of a creditor satisfies due process as "reasonably calculated" to inform the creditor of the bar date).

Mailing a notice to a creditor's last known address, however, while surely *sufficient* to satisfy due process, has never been found to be a *necessary* element of due process. Rather, the Supreme Court explained in *Mullane* that an "elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."[21] That means that the notice itself "be of such nature as reasonably to convey the required information," and the party to be bound must be afforded "a reasonable time … to make their appearance." *Id.* The Court then turned to the *means* by which notice is provided. "[W]hen notice is a person's due, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it." *Id.* at 315.

The Supreme Court more recently elaborated on this principle in *Jones v. Flowers.*[22] There, the Court held that when a taxing authority provided notice of tax foreclosure sale by mail, and the notice was returned as undeliverable, due process required the taxing authority to make some other effort to provide the homeowner with notice. The Court explained that while its precedents have "deemed notice constitutionally sufficient if it was reasonably calculated to reach the intended recipient when sent," the circumstance in which the sender becomes aware that its

---

[21] *Mullane*, 339 U.S. at 314.

[22] 547 U.S. 220 (2006).

notice has not reached the recipient presents "a new wrinkle." *Id.* at 226-227. Explaining that *Mullane* requires that means employed for notice "must be such as one desirous of actually informing the [creditor] might reasonably adopt to accomplish it," the Court concluded that one "who actually desired to inform a real property owner of an impending tax sale of a house" would not "do nothing when a certified letter sent to the owner is returned unclaimed." *Id.* at 229. "If the Commissioner prepared a stack of letters to mail to delinquent taxpayers, handed them to the postman, and then watched as the departing postman accidentally dropped the letters down a storm drain, one would certainly expect the Commissioner's office to prepare a new stack of letters and send them again. No one 'desirous of actually informing' the owners would simply shrug his shoulders as the letters disappeared and say, 'I tried.'" *Id.*

Following this authority, the question here, at least as far as due process is concerned, is whether the notice provided to Hansen Networks was by a means that might have been employed by a debtor who was "desirous of actually informing" its creditors of the bar date.

Here, the record shows that the debtor's claims agent emailed the notice to an email address that Mr. Hansen actively used. Mr. Hansen is the principal of Hansen Networks. Under the established principle that notice on an agent is sufficient to bind the principal, there is no question that sending an email to Mr. Hansen is a

13

means that might be employed by someone who wanted to provide appropriate notice to Hansen Networks.[23]

The evidentiary record establishes that notice of the bar date order was sent to a personal email address that Mr. Hansen actively used.  There is nothing in the record to suggest that the email was returned to the claims agent as undeliverable.  In fact, Mr. Hansen admitted that he used this same email address in a subsequent exchange of messages with the debtor.  Sept. 15, 2021 Hearing Tr. at 45-50.  While Mr. Hansen testified that he did not use the email address for Hansen Networks business before October 2020, Sept. 15, 2021 Hearing Tr. at 35, that testimony has nothing to do with the critical question – whether an email sent to that email address would be reasonably calculated to reach Mr. Hansen, and thus Hansen Networks. The Court concludes that it was.

Specifically, the factual record suggests that the means of notice provided here is at least as good (in terms of its likelihood of reaching the intended recipient) as an envelope placed in the mail addressed to the creditor's last known address.  A party who is giving notice under current circumstances would take account of the remote work environment brought on by the global pandemic, the well-publicized challenges faced by the U.S. Postal Service, and the increased reliance on electronic communications.  In light of those circumstances, a fair case could be made that a debtor who was singularly focused on ensuring that a creditor would learn of a bar

---

[23] *See, e.g., In re Color Tile Inc.*, 475 F.3d 508, 513 (3d Cir. 2007) ("Where an agent receives notice, that notice is imputed to the principal"); *Huston v. Procter & Gamble Paper Prods. Corp.*, 568 F.3d 100, 106 (3d Cir. 2009) (same).

date would send an email notice to an email address that the creditor actively used rather than dropping an envelope into a mailbox.

That is particularly true here. Mr. Hansen is a sophisticated party with a degree in computer science and more than 20 years of experience in the information technology industry. Sept. 15, 2021 Hearing Tr. at 8, 44-45. While a case involving an email sent to an email address of a 90-year-old man that was set up by his granddaughter might present a closer question, the record before the Court makes clear that one may reasonably presume that Mr. Hansen is more than capable of maintaining and keeping abreast of an email account. Indeed, the evidence in the record establishing that Mr. Hansen moved frequently and was difficult to reach through the postal service makes it all the more likely that he would have monitored his email and that one who was trying to reach him (or his company) would do so by sending him an email.[24]

## II.     The notice provided is nevertheless inadequate because it failed to comply with Bankruptcy Rule 2002.

In addition to satisfying the requirement of due process, a debtor is also obligated to meet the requirements of the Bankruptcy Rules. As the Third Circuit has explained, the "United States Supreme Court prescribes rules of practice and procedure for bankruptcy cases. 28 U.S.C. § 2075. The rules are not to 'abridge, enlarge, or modify any substantive right.' *Id.* Pursuant to this authority, the Court

---

[24] *See, e.g., Gilbertson v. J. Givoo Consultants I, Inc.*, No. CV-20-6991 (JHR), 2021 WL 689114 at *1 (D. N.J. February 23, 2021) ("[I]t is appropriate in the modern digital age to distribute notice by mail, email, and text, because although people frequently move and change addresses, they typically retain the same email addresses and phone numbers").

has promulgated the Federal Rules of Bankruptcy Procedure."[25]  When the Supreme Court does promulgate such a procedural rule, those rules "are binding and courts must abide by them unless there is an irreconcilable conflict with the Bankruptcy Code." *Id.* at 235.

Bankruptcy Rule 2002 sets forth specific requirements of notice.  Specifically, Bankruptcy Rule 2002(a) requires "at least 21 days' notice by mail" of certain events, such as a section 341 meeting, the use, sale or lease of property of the estate outside the ordinary course of business, or a hearing on a motion to dismiss or convert a case. Fed. R. Bankr. P. 2002(a)(1), (2) & (4).  Included on this list of events that require 21 days' notice by mail is "the time fixed for filing proofs of claim pursuant to Rule 3003(c)." Fed. R. Bankr. P. 2002(a)(7).[26]

Bankruptcy Rule 2002(g) explains how notices are to be addressed.  Notices mailed to a creditor "shall be addressed as such entity or an authorized agent has directed in its last request filed in the particular case." Fed. R. Bankr. P. 2002(g)(1). If the creditor has not made such a request, notice "shall be mailed to the address shown on the list of creditors or schedule of liabilities, whichever is filed later." Fed. R. Bankr. P. 2002(g)(2).

The clear import of the Bankruptcy Rules, therefore, is that a creditor is entitled to receive notice of the bar date by mail, at the address required by

---

[25] *Mansaray-Ruffin*, 530 F.3d at 234.

[26] *See also* Fed. R. Bankr. P 2002(f) ("the clerk, or some other person as the court may direct, shall give the debtor, all creditors, and indenture trustees notice by mail of … (3) the time allowed for filing claims pursuant to Rule 3002").

Bankruptcy Rule 2002(g).  Here, it is stipulated that Hansen Networks did not receive such a notice by mail.** And the evidentiary record makes clear that the notice of bar date that was sent by mail to Mr. Hansen was sent to his residence in Bayamon, Puerto Rico after Mr. Hansen had moved out of that residence.[27]  Because the requirements of the bankruptcy rules have not been satisfied, the bar date may not be enforced against Hansen Networks in the absence of a showing that the error was a harmless one.

## III.    The failure to provide proper notice was not harmless error.

The failure to comply with the requirements of Bankruptcy Rule 2002 would not necessarily be the end of the story if the debtor could show that the error was

---

** Note that Fed. R. Bankr. P. 9036, as amended in 2019, provides, in relevant part, that:

> Whenever these rules require or permit sending a notice or serving a paper by mail, the clerk, or some other person as the court or these rules may direct, may send the notice to—or serve the paper on—a registered user by filing it with the court's electronic-filing system. Or it may be sent to any person by other electronic means that the person consented to in writing.

Fed. R. Bankr. P. 9036.

The 2019 Advisory Committee notes state that the 2019 amendments are intended to "permit both notice and service by electronic means."  Nothing in the record of this case suggests that either Hansen Networks or Mr. Hansen was a "registered user" that may be served by the court's electronic-filing system or had consented to service by electronic means.  Nor does the docket reflect the entry of an appearance for Hansen Networks or Mr. Hansen before the docketing of the bar date notice.  *See* D.I. 157, Notice of Bar Date (Dec. 14, 2020); D.I. 374, Certification of Counsel (May 20, 2021) (first apparent appearance by counsel for Hansen Networks).  Accordingly, nothing in the Court's conclusion that service by electronic mail does not constitute service by mail is intended to call into question the enforceability of Fed. R. Bankr. P. 9036 in a case in which that Rule, by its terms, is applicable.

[27] In view of the specific requirement of Bankruptcy Rule 2002(g) regarding the manner in which the mail notice to a creditor must be addressed, it would not appear that successful mail service on Mr. Hansen would be sufficient, though it is certainly possible (as described below) that such service could render the failure to comply with the letter of Bankruptcy Rule 2002(g) a "harmless error."

"harmless."  Bankruptcy Rule 9005 provides that "[w]hen appropriate, the court may order the correction of any error or defect or the cure of any omission which does not affect substantial rights."  Bankruptcy Rule 9005 further provides that Rule 61 of the Federal Rules of Civil Procedure applies in bankruptcy cases.  And Rule 61 states that "[a]t every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights."  Fed. R. Civ. P. 61.

In order to show that the failure to provide proper service by mail was harmless, however, it is insufficient to demonstrate that the creditor was sent notice by some other means by which he *might* or *should* have learned of the bar date.  In the absence of a showing that the creditor obtained actual, subjective knowledge of the bar date, the Court is unable to conclude that the failure to meet the specific requirements of the rules may be treated as a no-harm-no-foul situation.

To that end, Mr. Hansen testified that he was not actually aware of the bar date until he was served with the subpoena for his Rule 2004 deposition.  Sept. 15, 2021 Hearing Tr. at 32-33.  And he further testified that because the amount of his claim was "a significant amount of money," if he had been aware of the bar date "I would definitely want to make sure that we were going to recover that."  *Id.* at 35. Further, as described above, Hansen Networks did in fact file a proof of claim within the time frame set out in the parties' stipulation after it had learned of the bar date.

Whatever one may think about Mr. Hansen's credibility as a general matter, this testimony accords with ordinary common sense.  The Court does not believe that Mr. Hansen had actual knowledge of the bar date by virtue of the email sent to his

email address.  If he had, the Court is persuaded that Hansen Networks would have filed a timely proof of claim.  The Court therefore cannot conclude that the failure to provide notice in the manner required by Bankruptcy Rule 2002 was harmless error.[28]

---

[28] While the Court believes that actual subjective knowledge *is* required, at least in these circumstances, to conclude that the failure to provide notice as required by the rules is harmless, it bears note that notice that *did* comport with the rules would be effective even if the creditor never obtained actual, subjective knowledge of the bar date.  In this sense, the term "actual notice" (when used to describe notice sent by mail to the creditor's proper address), and in particular the distinction between such "actual notice" and the "constructive notice" that is provided when notice is given by publication, *see In re Nortel Networks, Inc.*, 531 B.R. 53, 62 (Bankr. D. Del. 2015), is somewhat misleading.  A creditor that is sent a properly addressed bar date notice is deemed to have received "actual notice" and may be bound by the bar date even if the record demonstrates that the envelope was consumed, unopened and unread, by the creditor's dog.  In this sense, at least, the notion of "actual notice" may rely on a legal fiction in the same way that "constructive notice" does.

## Conclusion

For the reasons described above, the debtor's objection to Hansen Networks' claim on timeliness grounds will be overruled, without prejudice to the rights of the debtor or any other party-in-interest to object to the claim on other grounds. Hansen Networks is directed to settle an order to that effect for entry by the Court.

Dated: October 28, 2021

CRAIG T. GOLDBLATT
UNITED STATES BANKRUPTCY JUDGE